OPINION OF THE COURT
Ellen M. Coin, J.
Defendant was tried by the court in a bench trial on two counts of violating General Business Law § 395-b (2) (unlaw *443 fully installing or maintaining a two-way mirror or other viewing device), a violation. The charges arise out of defendant’s alleged installation of video cameras in two toilet stalls in women’s restrooms in the midtown office of an advertising company. Upon the failure of Detective Frank Salamone, one of the People’s witnesses, to appear for further cross-examination, the court granted defendant’s motion to strike Detective Salamone’s testimony.
Defendant moved for a trial order of dismissal, asserting three grounds for his motion: (1) that the premises in which the cameras were installed were private and excluded from the ambit of the statute; (2) that the People failed to prove that the subject cameras were operable; and (3) that defendant was not a manager of the premises, and therefore cannot be liable under the statute.
General Business Law § 395-b (2) provides:
“A person is guilty of unlawfully installing or maintaining a two-way mirror or other viewing device when, being the owner or manager of any premises, he knowingly permits or allows such a device to be installed or maintained in or upon such premises, for the purpose of surreptitiously observing the interior of any fitting room, restroom, toilet, bathroom, washroom, shower, or any room assigned to guests or patrons in a motel, hotel or inn.”
The statute expressly exempts from its application a “private dwelling.” (General Business Law § 395-b [3] [a] [iv].) It is upon this exemption that defendant mistakenly relies, arguing that the instant premises were “private.” A “dwelling” is defined as a “house or other structure in which a person lives; a residence or abode.” (Black’s Law Dictionary 524 [7th ed 1999].) The premises in this case were toilet stalls in women’s restrooms on two floors within the offices of an advertising company located in a 10-story office building which had a retail store on the ground level. There was no testimony adduced at trial that anyone resided or lived in any portion of the building or of the subject offices. Since the premises were not a “private dwelling,” the exemption contained in subdivision (3) (a) (iv) is inapplicable.
Defendant’s second argument was that the People were required to prove as an element of their case that the cameras in question were operable. He contends that because the court struck the testimony of Detective Salamone (the Technical Assistance Response Unit member who reconstructed the viewing *444 systems after their discovery and dismantling by the Screen Vision personnel), the prosecution failed to meet this burden.
The People contend, in opposition, that under prevailing case law operability is not a requisite element of this statute. In support of their position they cite three civil cases in which the statute was the predicate for actions in tqrt: Adams v Oak Park Mar. (261 AD2d 903 [4th Dept 1999]); Salamone v Oak Park Mar. (259 AD2d 987 [4th Dept 1999]); and Dana v Oak Park Mar. (230 AD2d 204 [4th Dept 1997]).
In the Oak Park Mar. cases the Appellate Division, Fourth Department, determined that General Business Law § 395-b (2) imposes a statutory duty upon owners and managers of premises not to install a viewing device, the breach of which may give rise to a cause of action for negligent infliction of emotional distress. In interpreting the requisite elements of such a cause, the Court held that the underlying statutory duty was breached by the installation of a video camera, and that whether a plaintiff was actually videotaped was not an essential element of the tort. (Adams v Oak Park Mar., 261 AD2d at 904; Salamone v Oak Park Mar., 259 AD2d at 988.)
The instant case, in contrast, is not a civil action for negligent infliction of emotional distress predicated on breach of the statutory duty, but a criminal prosecution alleging a violation of the statute. The issue of whether operability of the viewing device is an essential element of the statute in this context appears to be a matter of first impression.
General Business Law § 395-b (1) defines the phrase “two-way mirror or other viewing device” as “a mirror, peep hole, mechanical viewing device, camera or any other instrument or method that can be utilized to surreptitiously observe a person.” (Emphasis added.) A plain reading of the statute indicates that in order for a person to be guilty of its violation, the People must prove beyond a reasonable doubt that the viewing device is capable of being used to surreptitiously observe a person.*
Here the devices installed were video cameras. Notwithstanding their inability to rely upon Detective Salamone’s stricken *445 testimony, the evidence was legally sufficient to prove that the two cameras could be used for the requisite purpose.
The People introduced defendant’s written statement, in which he admitted that he had installed the cameras; that he ran video cable from the ladies’ rooms into the basement of the adjoining building; that he attached the cables to monitors; and that he watched women in the toilet stalls, going to the bathroom, on the monitors (People’s exhibit 20). While a defendant may not be convicted of an offense solely upon evidence of his confession (CPL 60.50), in this case there is additional proof that the offense charged was committed.
The People introduced unrebutted proof that the first camera, which had a red light, was observed behind an air vent cover in the ceiling above a toilet stall in the sixth floor women’s restroom. They also established that a second camera was found behind a heating vent cover in a toilet stall in the seventh floor women’s restroom. The People introduced testimony that the cameras, when found, were connected to wires running to the basement of an adjoining building. The wires went through a hole in the wall into a locked boiler room, to which defendant had a key. Police Officer Patrick Gavigan and Detective Michael Humphreys testified that a TV monitor and a combination TV-VCR were found in the boiler room.
Kada Sadat, a security guard, testified that defendant was not working on July 2, 2001 (the date of the discovery of the cameras), but that defendant telephoned him that evening. Upon learning of the police presence, defendant told Sadat to tell the police that he did not have a key to the boiler room and could not open it. In addition to this evidence of defendant’s consciousness of guilt, Detective Humphreys recovered pliers or wire cutters from defendant’s back pocket upon defendant’s arrival at the scene.
It is well settled that the statutory corroboration requirement does not mandate submission of independent evidence of every component of the crime charged. Instead, it calls for “ ‘some proof, of whatever weight, that a crime was committed by someone.’” (People v Chico, 90 NY2d 585, 589 [1997], citing People v Daniels, 37 NY2d 624, 629 [1975].) This additional evidence may be either direct or circumstantial. (People v Daniels, 37 NY2d at 629.) “The independent evidence need not even connect or tend to connect the defendant with the crime. The confession itself provides the means for understanding the circumstances of the transaction.” (Id. [citations omitted].) Here the evidence corroborating defendant’s confessions shows that *446 cameras were installed in the toilet stalls, and that wires were attached to the cameras which ran into the boiler room in the basement of the adjoining building, premises which were the work location of defendant. Thus, the evidence was legally sufficient to prove that the subject cameras were operable.
Defendant’s final point is that the evidence failed to show that he was a manager of the premises, subject to liability under the statute. A manager is defined as “[a] person who administers or supervises the affairs of a business, office, or other organization.” (Black’s Law Dictionary 972 [7th ed 1999].) A superintendent is defined as “[a] person with the power to direct activities; a manager.” (Id. at 1451.)
Here the unrebutted testimony of the People’s witnesses established that defendant was employed to oversee the day-to-day operations of three buildings, including 597 Fifth Avenue, the building in which the cameras were located. According to Frank Mariani, vice-president of Edizione Realty Corporation, the owner of the buildings, although defendant had no official title, his duties included ensuring that the buildings were secure; the supervision of two to three employees; the making of certain repairs, or, if he was unable to make them, the retention of persons with the requisite expertise to make such repairs; the scheduling of security guards; the maintenance of electricity in the basement and other portions of the buildings; and the maintenance of the front entryway of the buildings.
Other prosecution witnesses confirmed that defendant was the superintendent of 597 Fifth Avenue; that tenants of that building would report maintenance problems to defendant for attention; that defendant was the supervisor of the building’s security guards; and that defendant showed space in another Edizione building to Screen Vision’s Director of Human Resources. This cumulative evidence was legally sufficient to prove that defendant was indeed a manager of the building, supervising the affairs of the building and directing activities of security guards. Accordingly, defendant’s motion for a trial order of dismissal on this, as well as the preceding grounds, is denied.
The Verdict
The court finds that the People met their burden to prove beyond a reasonable doubt defendant’s guilt of each of the two counts charged of violating General Business Law § 95-b (2).

 In 1996 the Legislature amended General Business Law § 395-b to create the felony of unlawfully installing or maintaining a video recording device. (General Business Law § 395-b [2-a].) That section makes it a crime to install or maintain such device “for purpose of surreptitiously recording a visual image.” (Id. [emphasis added].) As the People have not charged defendant under that section, proof that the subject cameras were capable of making a videotape or film is not required; instead, the People’s burden is to show that the cameras could be used to surreptitiously observe a person. (General Business Law § 395-b [1].)